**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Steven J. Hulsman** (State Bar No. 010929)
Direct Dial: 602.262.5313
Direct Fax: 602.734.3769
Email: shulsman@lrrc.com

**Jared L. Sutton** (State Bar No. 028887)
Direct Dial: 602.262.0259
Direct Fax: 602.734.3924
Email: jsutton@lrrc.com

Attorneys for Plaintiff Christina C. Wray, on behalf of herself and all other similarly situated

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christina C. Wray, on behalf of herself and all other similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>PHI Air Medical, L.L.C., a Louisiana Limited Liability Company,<br><br>　　　　　　　　　　Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT** |

1.     Plaintiff Christina C. Wray by and through her counsel, brings this action individually and on behalf of a class of others similarly situated, against Defendant Phi Air Medical, L.L.C. because Defendant's agreements with Plaintiff and the class incorporated an undertaking by which the Court was to set the proper amount of compensation for Defendant, Defendant refused to exercise one of many available avenues to contract around the court providing price, and because Defendant lacks any legal basis to collect the arbitrary and exorbitant amounts it is asking Plaintiff and the class to pay.

## **INTRODUCTION**

2.     Plaintiff brings this proposed class action on behalf of herself and all other similarly situated person charged by Defendant for the transportation of patients to hospitals in the Southwest, including the States of Arizona (location of its headquarters), California, New Mexico and Texas and also in the upper Midwest and

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

even east-coast states. See Defendant's service map at http://phiairmedical.com/where-we-are/national-map.html. For individuals like Plaintiff, first responders or other emergency personnel generally determine whether a patient needs emergency helicopter transport to the hospital. The transportation is generally arranged, and patients are transported, without their knowledge or express or informed consent, or under the duress of life-threatening or other serious medical conditions that require immediate treatment at a hospital. Given the dire circumstances, express or informed consent or negotiation of essential terms is typically impossible because the patient is either unconscious or otherwise incapable of giving meaningful express or informed consent.

3.    There are no express contracts for the payment of the prices charged for the transportation between Plaintiff, the Class, and the Defendant. Defendant did not inform either Plaintiff or the class regarding the price of the transportation, and no express agreement exists to pay the arbitrary price subsequently charged by the Defendant. Defendant does not even provide constructive notice of the price by way of publication of its fee schedule on its web site or otherwise. Its prices are only disclosed after-the-fact.

4.    After the transportation is complete Defendant sends a statement for the transportation showing a "base rate" and a "mileage" charge (collectively "charged amount") and demands payment from the Plaintiff and the Class. The rate that will be charged by Defendant for the "base charge" and "mileage" is known to Defendant prior the transportation, but it is not published on their web site or otherwise disclosed to Plaintiff and the Class. Even in instances where a family member, or even less frequently, a coherent patient themselves, signs a document with Defendant before a transport, that document does not disclose the prices to be charged. Therefore, there is not a material difference between express and implied contractual relations between Defendant and the class, because in both contexts, the Court is agreed to set the price.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

5.      The Class will include the patient transported, the legal custodian of the patient (in the case of spouses or minor or mentally disabled patients), the estate of a deceased patient, or any person or entity from whom Defendant has demanded payment for helicopter ambulance transport of themselves or another.

6.      The price comprising the charged amount was not disclosed to the Plaintiff or the Class by Defendant, nor is the price charged agreed to or negotiated by the Defendant and the persons charged prior to transportation of the patient.  As such Defendant's express undertaking is to submit to a court the question of the proper amount to be charged for any services provided.

7.      In this action, Plaintiff, on behalf of herself and the Class, seeks a declaration with respect to Plaintiff's and the Class's legal obligation, if any, with respect to payment to Defendant of the prices charged for the transportation services provided and for the Court to determine the unspecified price term.

8.      The ADA, 49 U.S.C. § 41713(b)(1) provides:

> [A] State, political subdivision of a State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

9.      The text of the ADA reveals that Defendant is not a "common carrier," which is a prerequisite to being an "air carrier."   An "air carrier" provides "air transportation" which means "transportation of passengers…as a **common carrier** for compensation." 49 USC §40102(a).  A "common carrier" is defined as "any carrier required by law to convey passengers…without refusal if approved fare or charge is paid in contrast to private or contract carrier."  BLACK'S LAW DICTIONARY (emphasis added).   Irregular routes indicate that a carrier is not a "common carrier."   The definition from BLACKS was cited with approval in a D.C. Circuit opinion interpreting the term "common carrier," and the case also cited the presumption set by the Supreme Court of "following the common law usage where Congress has employed a term with a well-settled common law meaning."  *CSI Aviation Servs v. United States DOT*, 637

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

F.3d 408, 415 (D.C. Cir. 2011) (finding that the company in that case was not an "air carrier" because they did not meet the definition of a "common carrier"). The absence of "approved fares or charges," in fact even publicly disclosed prices, and the absence of regular routes with fixed end points, make clear that Defendant is not a "common carrier" and should thus not be deemed an "air carrier." *Alves v. Pub. Utils. Comm'n*, 260 P.2d 785, 788 (Cal. 1953) (discussing the differences between a "common carrier between fixed termini and over regular routes" and a "highway contract carrier" that does not operate between fixed termini and over regular routes); *Railroad Comm'n of Tex. v. Cent. Freight Lines, Inc.*, 434 S.W.2d 911, 916 (Tex. App. 1968) (discussing the differences between carriers operating over "regular routes" and between fixed termini and those on "irregular routes").

10.    Defendant sends a statement for the charged amount to the Plaintiff and Class and demands payments for prices that the Plaintiff and Class never agreed to pay. In the absence of payment, Defendant initiates collections, reports the amount charged as an unpaid bill to credit reporting agencies, engages in collection efforts, seeks to enforce liens, and initiates suit in state courts, or seeks to enforce state law related to the price or services they provide. Defendant demands payment, initiates collection efforts, and threatens suit in state court for judgments based upon prices never disclosed and agreed upon for the services provided by the Defendant in spite of the fact that Defendant knew, prior to the transportation, the prices they would charge.

11.    Defendant has the option to negotiate an agreed rate with Plaintiff's insurer and the insurers of the class. However, Defendant has refused to enter such negotiations preferring, instead, to submit the price under its agreement to determination by the Court.

12.    Defendant has found it makes more money by refusing to negotiate and instead attempting to impose its excessive prices on Plaintiff and others similarly situated after the fact. The Tenth Circuit described the situation thus: "Unscrupulous pricing behaviors that would not be sustainable in a true free market…are easily

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

perpetuated in the warped market of air-ambulance service." *Eaglemed, LLC v. Cox*, 868 F.3d 893, 903 (10th Cir. 2017).

13.    The type of preliminary approach advanced by Plaintiff is illustrated by an order from *Wagner v. Summit Air Amb. & Reach Air Med*, 2017 U.S. Dist. LEXIS 177709, 2017 WL 4855391 (D. Mont. Oct. 26, 2017), refusing to dismiss a complaint asserting claims like Plaintiff herein asserts. The referenced *Wagner* order is attached as Exhibit 8. *Wagner* found that the defendant air ambulance companies in that case "knowingly incorporated a consideration term of 'reasonable worth' by their self-imposed and voluntary undertaking to omit a specific consideration term." Plaintiff intends to and does assert the same type of claims herein as those asserted in *Wagner*.

## PARTIES

14.    Plaintiff Christina C. Wray is a citizen of the State of Oklahoma who was, at the time of her transport by Defendant, on vacation in New Mexico.

15.    Defendant Phi Air Medical, L.L.C. is incorporated under the laws of Louisiana with a principal place of business located at 2800 N. 44th Street, Suite 800, Phoenix, Arizona 85008, with its Arizona registered agent, CT Corporation System, 3800 N. Central Ave., Suite 460, Phoenix, Arizona 85012. Defendant claims it "safely transport[s] more than 30,000 patients each year, operating out of more than 65 bases across the United States." http://www.iflyphi.com/who-we-are/phi-air-medical.html Defendant's practices and policies referenced herein emanate from its corporate headquarters in Arizona.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction pursuant to 28 U.S.C § 1331. Further, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which Plaintiff and members of the Class are citizens of states different from Defendant.

17.    This Court has personal jurisdiction over Defendant because it is authorized to do business and is conducting business throughout the United States,

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

including Arizona; it has sufficient minimum contacts with the various states of the United States, and the State of Arizona; and/or sufficiently avails itself of the markets of the various states of the United States, including Arizona, to render proper the exercise of jurisdiction by this Court.

18.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant maintains its headquarters in this District and is subject to personal jurisdiction in this District, and has consented to venue in this District.

19.     Venue is also proper because: (a) Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (b) does substantial business in this District; and (c) is subject to personal jurisdiction in this District.

## **FACTS**

20.     On December 20, 2015 Plaintiff was on vacation near Taos, New Mexico.  The heater in the house Plaintiff was staying in malfunctioned, exposing Plaintiff to excessive carbon monoxide, which presented a risk to Plaintiff and her unborn baby.  She was transported by helicopter from Holy Cross Hospital in Taos, New Mexico to Presbyterian Hospital in Albuquerque, New Mexico.  After Plaintiff's transport, she initiated a personal injury claim against the homeowner, which claim was ultimately paid by the homeowner's insurer.

21.     No express oral or written contract was agreed to between Plaintiff and Defendant regarding the price Defendant would charge for Plaintiff's transportation, and Defendant did not state the price it charged for its services. Nor did Plaintiff agree to any express price or other consideration to be paid by Plaintiff to Defendant for transportation.   Instead, Defendant transported Plaintiff without any agreement regarding the price Defendant would charge for that transportation.   Defendant's voluntary undertaking was a transportation of Plaintiff without any knowledge of the exact price to be assessed, so Defendant undertook to transport Plaintiff for a price to be set by the Court.

22.     Following the transport, Defendant billed Plaintiff a total of $57,374.00 including a $25,678.00 "Base Rate," along with an additional $31,696.00 for 127 miles of transport at $283.00 per mile.  *See* Exhibit 1, January 12, 2016 Statement.  No disclosure was given to Plaintiff of the charges that would be assessed for the transportation.

23.     The Defendant's statement was submitted by Defendant to Plaintiff's third-party health insurance through BlueCross BlueShield of Texas ("BCBS"), which paid $3,951.55 toward the "base rate" and $2,869.02 toward the mileage for a total allowed amount of $6,820.57.  After Plaintiff's deductible and coinsurance amounts, a $5,157.32 payment was made by BCBS to Defendant. *See* Exhibit 2, June 3, 2016 explanation of benefits ("EOB").

24.     On April 13, 2016 Defendant billed Plaintiff $57,374.00, the charged amount, and demanded payment, asking Plaintiff to sign over the insurance check and send a check for the balance, comprising payment of the full charged amount.  *See* Exhibit 3, letter from "Tanishya K" at Defendant's Patient Financial Services. Defendant stated that "payment is expected within 10 days after receipt of this notice."

25.     On November 22, 2016, Defendant wrote to Plaintiff's attorney in her personal injury case offering a $15,665.00 discount, making the amount due $36,551.68 if payment was received within 30 days of the letter.  After 30 days, the offer was "null and void and the balance will be due in full." *See* Exhibit 4, letter from "Gretchen Mc." with Defendant's Patient Financial Services division.  By this time, Plaintiff had paid the BCBS payment over to Defendant, so this letter referenced the full amount due, before the offered discount, of $52,216.68, which is $5,157.32 less than the $57,374.00 originally-billed amount.

26.     Plaintiff's personal-injury attorney wrote to Defendant several times thereafter and also talked to its representatives on the phone several times.  *See* Exhibit 5, December 14 and December 19, 2016 letters from Plaintiff's personal-injury attorney, Gary Homsey.  Plaintiff offered Defendant a total $12,000.00 as payment-in-

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

full of Defendant's charges, which included BCBS's payment and an additional $6,842.68 from Plaintiff.  Later, per a December 19, 2016 phone call, Plaintiff's lawyer noted that Defendant had rejected Plaintiff's counteroffer.

27.    On December 19, 2016, Defendant wrote to Plaintiff's personal-injury attorney offering the $15,665 discount for an additional 10 days.  This offer meant that the discount, which would have expired on December 22 would remain open through December 29 – a 10-day extension.  This letter was a confirmation of what Plaintiff's attorney stated in his letter of December 19 – that Defendant rejected Plaintiff's counteroffer and refused to better their settlement offer.

28.    Defendant wrote to Plaintiff's personal-injury attorney again on December 27, 2016 renewing the $36,551.68 settlement offer for an additional seven days.  *See* Exhibit 6, letter from Jennifer Lytle, a Strategic Operations Specialist with Defendant's Patient Financial Services division in its Phoenix, Arizona headquarters. Defendant sought certain "required" information to submit Plaintiff's request to its board for a second time seeking an additional discount.  If Plaintiff failed or refused to comply with Defendant's request for very detailed information about Plaintiff's personal injury case and other medical providers, then the settlement offer would become "null and void and the balance will be due in full."

29.    Defendant next wrote Plaintiff on January 11, 2017 indicating that Plaintiff's personal-injury attorney was "no longer cooperating" with Defendant, so the full balance on the account was due.  *See* Exhibit 7, letter from Jennifer Lytle.  If the balance was not received within 15 days, Defendant stated its intent to refer the matter to Bonneville Collections.

30.    On information and belief, Defendant has filed multiple state-court breach-of-contract suits in multiple states to collect their charges, both by direct actions against a transported person and by way of making claims in interpleader actions.

31.    On information and belief, Defendant has filed proof of claims in multiple bankruptcy cases asserting a right to be paid based on state-law breach-of-contract theories.

32.    On information and belief, Defendant has filed claims in estate cases to recover their charges for transportation of a deceased person in multiple cases.

33.    On information and belief, Defendant has sought more compensation from Medicare, Medicaid and Tricare insureds than is allowed under the relevant payment schedule for providers that accept assignment of benefits from Medicare, Medicaid and Tricare patients.

34.    On information and belief, Defendant has sought more compensation from patients with commercial insurance, employer-sponsored health benefits plans, and other non-governmental third-party payers than what the insurance industry has determined to be the uniform, customary, and reasonable rate in each locality.

35.    On information and belief, Defendant has compelled class members to enter into contracts to pay their full billed amount in monthly installments paid over decades with interest.

36.    On information and belief, Defendant has enforced, or sought to enforce, subrogation claims or liens against personal injury claims or recoveries seeking their full billed amounts.

37.    Defendant's collection efforts against Plaintiff were ongoing at the time this action was filed, and Defendants will continue efforts to collect their improperly-billed amounts in the absence of relief granted by the Court in this action.  There is a live and ongoing dispute between Plaintiff and Defendant.

## Constitutional Issues

38.    First, Plaintiff notes that there is a straightforward legal path to address this dispute in the context of an agreement undertaken by the parties with the understanding that the Court would set the price term, so it is unnecessary to even reach the difficult constitutional problems presented by the positions previously taken

103558039_1

by air ambulance companies.  However, since the issues have been reached in prior cases, the following constitutional claims are asserted in the alternative.

39.    The legal position of air ambulance companies in prior cases has been simple: under the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"), air ambulance companies claim they are vested by the ADA with plenary power to set whatever price they choose for transportation of patients in extremis who have no opportunity to decide whether they want or need transportation, and this Court, and all other courts, are powerless to decide issues related to the arbitrary and inflated prices imposed after-the-fact by Defendant.

40.    Plaintiff's position can also be simply stated:  the air ambulance companies' assertion cannot be right about what the law is.  It is fundamentally unfair, and shocking to the conscience, that persons who are transported while gravely injured by a company called to respond without their knowledge or express or informed consent can be charged whatever price Defendant chooses, and there is zero opportunity for Plaintiff to challenge Defendant's purported plenary power.  Even actions by the other branches of the federal government are subject to judicial review, and it is beyond the pale to assert that Defendant's undisclosed prices are not.

41.    **Seventh Amendment – Right to Jury Trial.**  Air ambulance companies have previously asserted that they have the right to seek compensation from their clients based on various state law theories including, but not limited to, express or implied state law contract, but amazingly then asserted that courts have no right to question the air ambulance company's arbitrarily-billed charges.

> [Court]: Your company can bill what it wants and collect based on…some…state law theory, but…[transported patients] can't challenge the bill under that same theory.

> [Counsel for Air Methods]: That is the nature of ADA preemption under the law as it's written now.

> [Court]: That's crazy.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

Trans. of Sept. 27, 2017 hearing in *Scarlett et al. v. Air Methods Corp.* (D. Colo. Case No. 16-CIV-2723-RBJ) (the affiliated companies of Air Methods and Rocky Mountain comprise the nation's largest air ambulance company).

42.     The *Wagner* court found that a "circular logic permeates these arguments" made by air ambulance companies.  Exhibit 8 at pp. 5-6 (*Wagner* order).

43.     If Defendant asserts the same one-way-agreement argument advanced by its peers, such a legal situation would violate Plaintiff's and the class's Seventh Amendment right to a jury. "No question that a breach of contract seeking money damages was triable at law in 1791" so a party joined in such an action would be entitled to a jury.  *Gangitano v. NN Inv'rs Life Ins.*, 773 F. Supp. 342, 343-44 (S.D. Fla. 1990); *see also OHC Liquidation Trust v. Credit Suisse*, 378 B.R. 59 (D. Del. Bankr. 2007) (claims seeking "money damages for breach of express or implied contracts are clearly legal") (quoting from *Donovan v. Robbins*, 579 F. Supp. 817, 822 (N.D. Ill. 1984)).  "As a general rule, monetary relief is legal…and that claims…[have] a right to trial by jury."  *Control Ctr, LLC v. Lauer*, 288 B.R. 269, 278 (M.D. Fla. 2002) (*citing Feltner v. Colum. Pict. Tele., Inc.*, 523 U.S. 340, 352 (1988)).

44.     **Fifth Amendment – Due Process.**  The Fifth Amendment to the United States Constitution provides that "no person shall be deprived of … property without due process of law."  Plaintiff's constitutional rights under the foregoing provision are denied by the ADA as applied in these circumstances.

45.     Given existing precedent, Plaintiff asks the Court to declare the ADA unconstitutional as applied to air ambulance transport providers such as Defendant.

46.     If the ADA preempts Plaintiff's state common law breach of contract claims in the absence of a written agreement or mutual assent (despite Defendant's unilateral undertaking to provide air medical transportation), and the federal common law of contracts does not supply a means by which Plaintiff may challenge the reasonableness of Defendant's unilateral price, Plaintiff has no procedural mechanism or remedy at law to address a deprivation of her personal property.

47.    Under such a scenario Plaintiff's right to procedural due process is denied because no prior notice of Defendant's pricing is afforded, no opportunity to accept or negotiate such a term is afforded, and ultimately no opportunity to contest Defendant's unilateral price term is afforded.  There is no process whatsoever.

48.    Under existing precedent and Defendant's expected position on this issue, neither the Court nor Plaintiff has the ability to challenge or declare rights related to the price term imposed by Defendant.

49.    As a result, the ADA is unconstitutional as applied to Plaintiff and the class as it denies them any method by which to challenge and be heard on this issue, imposing financial hardship upon them with no recourse.

50.    Plaintiff's rights to substantive due process are also denied as the ADA is applied to air ambulance transport providers and it is directly contrary to the stated intent of the ADA.

51.    Congress did not intend the result Defendant seeks (absolute power to charge whatever they want).  If the ADA applies to give non-traditional air carriers such as air ambulance transport providers unchecked discretion to charge whatever it wants for services provided under duress and with no competition it is an unintended consequence of a bill that had decreasing prices and increasing competition as its goal.

52.    The ADA was implemented in 1978 so that market forces, as opposed to state laws, could press efficiency, innovation, and low prices for consumers.  In a message to Congress dated March 4, 1977, President Jimmy Carter urged a reduction in the regulations imposed on the airline industry so that consumers may benefit from significantly lower prices, competitors may enter the market, and air carriers may alter their routes without prior governmental approval. *See* Airline Industry Regulation, Message from Pres. Carter to the Congress, March 4, 1977.  Recognizing that deregulation of the airline industry would be a significant feat, President Carter closed his message by reminding Congress that "we must take care to protect the legitimate interests of the public." *Id.*  The purpose of the ADA was competition and lower

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

prices.  At the time of signing, President Carter identified two critical objectives of the ADA: first, to fight inflation, and second, "to ensure American citizens of an opportunity for low-priced air transportation." Airline Deregulation Act of 1978 Remarks on Signing S. 2493 into Law, October 24, 1978.  Neither of those objectives is served if the ADA applies to foreclose any challenge to an air ambulance transport provider's unilateral price setting in a competition-free, medically necessary environment.

53.     Other air ambulance companies have argued that air ambulance passengers are not without a process, they can present their claims to the Department of Transportation ("DOT").  The idea that DOT can effectively regulate prices for the 500,000-plus annual air ambulance transports is contrary to the basic proposition of the ADA: getting the federal government out of the business of regulating prices on routes. Further, the Supreme Court in *Wolens* held that DOT has "***neither the authority nor the apparatus*** required to superintend a contract resolution regime."  *Am. Airlines v. Wolens*, 513 U.S. 219, 232 (1995) (emphasis added) (emphasizing that DOT's role was ensuring accurate disclosure, which is not relevant here because air ambulance companies make no disclosures at all).

54.     Given the foregoing, the ADA's preemption provision, as applied to the emergency air ambulance context, operates to unconstitutionally deny Plaintiff procedural and, alternatively, substantive due process rights.

## CLASS ACTION ALLEGATIONS

55.     This action is brought and may be maintained as a class action pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3) are met with respect to the Class defined as follows:

> All persons billed by Defendant, or who paid a bill from Defendant, for air medical transport that Defendant carried out from a location in the United States without an express contract term, prior to transport, setting the specific mileage and base rate charges.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or which have a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

56.    Plaintiff reserves the right to redefine the Class prior to class certification.

57.    The members of the Class are so numerous that joinder of all members is impracticable.    The exact number of Class Members is unknown as such information is in the exclusive control of Defendant.   However, due to the nature of the trade and commerce involved, Plaintiff believes the Proposed Class consists of thousands of Class Members.   Defendant itself claims that it transports "more than 30,000 patients each year, operating out of more than 65 bases across the United States." http://www.iflyphi.com/who-we-are/phi-air-medical.html.

58.    Common questions of law and fact affect the rights of each Class Member and a common relief by way of declaratory judgment and injunction, including at least the following:

a.    Did the Defendant and Plaintiff have an agreement for Plaintiff to pay a price determined by the Court for Defendant's patient transportation services?

b.    Did the Defendant have a fixed mileage price and "helicopter rotor base" price for the transportation before Plaintiff and Class Members were transported?

c.    Did Defendant communicate their fixed mileage price and "helicopter rotor base" price for the transportation to Plaintiff and the Class, actually or constructively, before the patients were transported?

d.    Did Defendant demand payment of a fixed mileage price and "helicopter rotor base" price for the transportation of patients when the mileage and helicopter rotor base prices sought had not been expressly agreed to by Plaintiff and the Class?

e.    What voluntary undertakings did Defendant accept regarding transportation of Plaintiff and the Class?

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

f.    Is there any basis for Defendant to recover its billed fees other than via state law claims for implied or express (if a writing is signed) contract?

g.    Whether Defendant could contract around the Court supplying the price by i) publicly disclosing its prices, for example on its web site; ii) disclosing pricing on its written contracts; or iii) negotiating with Plaintiff's and the class' insurers on an agreed rate?

h.    Whether Defendant undertook an agreement with the knowledge that the absence of an express price term necessarily required the Court to provide a price?

i.    Whether the Court should grant injunctive relief to Plaintiff and the Class to prevent the all further collection efforts by the Defendant?

j.    If Defendant asserts the same arguments advanced by other air ambulance companies in previous cases, whether the positions asserted by Defendant violate Plaintiff's and the Class's right to a jury trial under the Seventh Amendment or deny them Due Process.

59.    The claims and defenses of the named Plaintiff are typical of the claims and defenses of the Class.  Defendant has sought to impose undisclosed, arbitrary prices by Defendant for transportation mileage and "helicopter rotor base" in violation of the parties' agreement for the Court to provide the price term.

60.    The named Plaintiff will fairly and adequately assert and protect the interests of the Class.  Specifically, she has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class.  Neither the named Plaintiff nor Class Counsel have a conflict of interest that will interfere with the maintenance of this class action.

61.    A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

b.    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.    There are no unusual legal or factual issues which would create manageability problems;

d.  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

e.  Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### Breach of Contract

62.  Plaintiff and the Class incorporate the paragraphs outside of this Count as though set forth herein.

63.  Prior to the receipt of services, Defendant chose to engage in no disclosure or negotiation of contract terms.

64.  Plaintiff and Defendant did not enter into either a written or oral agreement on the price Defendant charges for transport services.

65.  Plaintiff accepts that Defendant did not provide its services gratuitously. But any agreement between them (and between Defendant and Class Members) did not mention the price to be charged for the services.

66.  Prior to sending Plaintiff and members of the Class a bill, Defendant never disclosed the rates it charges for its services.  As these agreements contained an undefined price term they constituted an undertaking to provide services with the understanding that the price would be a reasonable amount set by the Court.

67.  Plaintiff and members of the Class, to the extent they had any understanding at the time of contracting, had a reasonable expectation that Defendant would charge a reasonable amount for its services.

103558039_1

68.    Instead of charging Plaintiff and members of the Class properly for its services and materials, Defendant breached the agreement by charging inflated and exorbitant prices that bear no reasonable relationship to the value of the services rendered.

69.    By any measure, the price Defendant charged Plaintiff and members of the Class for services were unreasonable. These prices far exceeded the amounts paid by third party payers, including the "uniform, customary, and reasonable" amount paid by the health insurance companies or employer-sponsored health benefits plans and the amount paid by Medicare, Medicaid and other government payers for the same services.

70.    As a result of Defendant's breach of the agreements, Plaintiff and members of the Class have been injured in the amount at least equal to the overcharges levied by Defendant, and any other consequential damages flowing from the breaches. Plaintiff and members of the Class are therefore entitled to restitution remedies, consequential damages, pre-judgment interest and such other relief as set forth in the prayer below.

## COUNT II

### Injunctive and Declaratory Relief

71.    Plaintiff and the Class incorporate the paragraphs outside of this Count as though set forth herein.

72.    28 U.S.C §2201 provides as follows:

In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

73.    Prior to the provision of services, no negotiation of contract terms regarding the price of Defendant's transportation services took place and Plaintiff, the

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

Class and Defendant did not enter into an express agreement on the price Defendant would charge, and the Plaintiff/Class would pay for transport services.

74.    In all instances, Defendant seeks assistance from the Plaintiff and the Class to obtain third-party payment for the charged amounts.

75.    If there is no third-party payment or that payment is less than the charged amounts, Defendant demands payment ("balance bills"), threatens adverse consequences, and initiates detrimental collection efforts against Plaintiff and the Class.

76.    In the event Plaintiff and the Class do not pay Defendant the charged amounts, Defendant threatens collection, reports the unpaid charged amount as bad debt to credit reporting agencies, accrues interest and fees, and ultimately may file suit in state court or claims in bankruptcy for the amounts charged to coerce Plaintiff and the Class to make payments that they do not owe, and Defendant cannot legally collect.

77.    Plaintiff and the Class seek injunctive and declaratory relief for the purposes of determining questions of actual controversy between the Plaintiff, the Class and Defendant.   The exhibits to this Complaint show Defendant's extensive efforts to collect their alleged debt from Plaintiff, and Defendant has expressed an intent to engage in ongoing collection efforts.

78.    Defendant has acted in a uniform manner in failing to disclose and negotiate the price it would charge for transportation services before rendering services, balance billing the Plaintiff and the Class in the event the charged amounts are not paid, and engaging in collection efforts, including litigation.

79.    Defendant has acted or refused to act on grounds that apply generally to Plaintiff and the Class such that declaratory relief to determine whether Defendant and Plaintiff, and the Class, have an enforceable agreement, the enforcement of which is not preempted by the ADA, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

80.    Defendant has demanded payment of the charged amounts from the Plaintiff and the Class, and have threatened or initiated collection efforts against the Plaintiff and the Class.

81.    There is an actual dispute and controversy between Plaintiff and the Class, and Defendant as to whether Defendant can demand payment for services concerning which no express price was agreed, can engage in collection efforts where no legally enforceable contract exists, can impose interest and costs of collection on Plaintiff and the Class, and whether any attempt by Defendant to collect the amounts charged under the circumstances is prohibited by the preemption provisions of the ADA.

82.    Plaintiff and the Class have no adequate remedy at law.

83.    Plaintiff seeks declarations to determine the rights of the Class Members, in particular:

a.    The Court finds that Defendant chose not to enter into any express and informed contract for Plaintiff and the Class to disclose prices charged by the Defendant for the transportation services it provided;

b.    If the Court finds the parties did not voluntarily undertake to have the Court set the price, then the Court should find the ADA, 49 U.S.C. § 41713, preempts Defendant from seeking judicial enforcement or judgment against Plaintiff and the Class where Defendant and the Plaintiff, and the Class, did not agree to pay the prices charged prior to the transportation of patients because such action by a court would impose terms on the parties that they did not voluntarily undertake;

c.    The Court finds that Defendant has no legal enforceable right to collect the prices charged in court proceedings, or other collection efforts, and Plaintiff and the Class, have no obligation to pay Defendant the prices charged.

d.    If Defendant asserts the same arguments advanced by other air ambulance companies in previous cases, the Court finds that the positions asserted by Defendant violate Plaintiff's and the Class's right to a jury trial under the Seventh Amendment and/or deny them Due Process.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

84.    Plaintiffs and the Class further seek a prospective order from the Court requiring Defendants to: (1) cease charging for the transporting of patients without an express agreement or full disclosure as to the rates for mileage and helicopter rotor base; and (2) to cease Defendant's attempts to collect outstanding bills for which no agreement as to price exists from Plaintiff and the Members of the Proposed Class, except at a price that Defendant has undertaken for the Court to set.

85.    Plaintiff and the Proposed Class seek the disgorgement by Defendant of all sums collected by the Defendant from third-party payers, and the Class who have paid any amounts charged by the Defendant and other relief as set forth in the prayer below.

86.    Defendant's collection efforts damage the credit or financial health of Plaintiff and the Class, cause them to incur legal fees and litigation expenses, impede their ability to resolve personal injury claims, force them to consider filing or file bankruptcy, and expose Plaintiff and the Class to claims for unlawful rates, interest on unpaid Defendant's charges and vexing and harassing collection efforts.  As a result of Defendant's practices as described above, Plaintiff and the Class have suffered, and will continue to suffer, irreparable harm and injury.

87.    Accordingly, Plaintiff and the Class respectfully ask the Court to enter a permanent injunction ordering Defendant to cease and desist their practice of charging Plaintiff and the Class for transporting patients in any amount greater than the reasonable amount set by the Court.

## PRAYER FOR RELIEF

**THEREFORE**, Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

a)    Entering an order certifying the Class (and subclasses, if applicable), designating Plaintiff as the class representatives, and designating the undersigned as class counsel;

b)    Awarding consequential damages;

c)     Awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

d)     Imposing a constructive trust, where appropriate, on amounts wrongfully collected from Plaintiff and the Class Members pending resolution of their claims herein;

e)     Issuing appropriate declaratory and injunctive relief to declare the rights of Plaintiff and the Class Members;

f)     Finding that Defendant has breached the terms of its agreement by refusing to bill and accept a price established by the Court in the absence of an express price term;

g)     Awarding pre-judgment and post-judgment interest; and

h)     Granting such further relief as the law allows and the Court deems just.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demand a trial by jury on all claims and issues.

DATED this 7th day of February, 2018.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: /s/ Steven J. Hulsman
    Steven J. Hulsman
    Jared L. Sutton
*Attorneys for Plaintiff Christina C. Wray, on behalf of herself and all other similarly situated*

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

103558039_1

21